=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 152
In the Matter of Rafael
Cortorreal,
          Appellant,
        v.
Anthony J. Annucci, &c.,
          Respondent.

Matthew P. McGowan, for appellant.
Andrea Oser, for respondent.

FAHEY, J.:

A hearing officer presiding at an inmate's disciplinary
hearing violates the inmate's right to call witnesses by failing
to undertake a meaningful inquiry into a requested witness's
allegation that the witness had been coerced into refusing to
testify in a related proceeding.

- 1 -

I.

While he was incarcerated at Sing Sing Correctional Facility, petitioner Rafael Cortorreal was employed as a building porter. On July 25, 2012, a correction officer found marihuana hidden in a waste container outside the building where petitioner worked. The officer had been searching for the contraband after receiving tips from two confidential informants implicating petitioner.

The correction officer completed an inmate misbehavior report alleging that petitioner had violated two standards of inmate behavior under 7 NYCRR 270.2. On August 23, 2012, a Tier III disciplinary hearing was held at Sing Sing, and petitioner was found guilty of both charges. The decision was reversed, however, on administrative appeal, on the ground that "a potentially relevant witness was not properly addressed through testimony or denial."

By the winter, petitioner had been transferred to Southport Correctional Facility. There, a rehearing commenced before a hearing officer on December 5, 2012. The correction officer who had charged petitioner testified that, as a building porter, petitioner had been given unsupervised access to the area where the marihuana had been found, and that other inmates would not have had such unmonitored access.

Petitioner pleaded not guilty, claiming that the confidential informants had fabricated their allegations, and

that any number of inmates could have placed the marihuana
outside the building.  Petitioner requested testimony from 10
inmate witnesses.  Eight refused to testify, completing
"Requested Inmate Witness Refusal To Testify" forms.  Five of
these wrote short explanations, next to a preprinted "I do not
want to be involved" option, generally to the effect that they
had no knowledge of the situation.  The remaining three inmates
wrote, next to the same preprinted option, the words "I do not
wish to testify" or similar language.  (The other two requested
inmate witnesses are not pertinent to this appeal.)

On December 21, 2012, the hearing officer showed the
refusal forms to petitioner and read them to him because
petitioner had some difficulty reading English.  Petitioner asked
the hearing officer to confirm "personally" that the eight
refusing inmates were not willing to testify; the hearing officer
declined.

On the same date, the hearing officer accepted into
evidence a sworn affidavit by one of the refusing inmate
witnesses, whose testimony petitioner had also requested at the
August hearing.  In the affidavit, the refusing inmate stated
that at the time of the first hearing a named correction officer
at Sing Sing had told him "that it would not be a good thing" to
testify for petitioner, and that the officer had made this
communication "in an aggressive manner meant to intimidate."  The
inmate also stated in the affidavit that he had been "told" what

to write on the refusal form he had signed in August.

The hearing officer did not contact the inmate, nor did he contact the correction officer who had allegedly coerced the inmate. Instead, the hearing officer took testimony from the correction officer who had been present on December 17, 2012, when the inmate signed a refusal form with respect to the rehearing. That officer testified that he had not coerced the inmate, that he had not witnessed any coercion, and that the inmate had not mentioned any prior intimidation.

At the conclusion of the rehearing, the hearing officer found petitioner guilty of violating the two prison disciplinary rules and imposed a penalty of 12 months' punitive confinement in a special housing unit. The Department of Corrections and Community Supervision (DOCCS) affirmed the hearing disposition on administrative appeal.

Petitioner commenced this CPLR article 78 proceeding against the Acting Commissioner of DOCCS, challenging the determination. He argues that the three refusal forms stating only that the requested inmate did not wish to testify failed to supply a reason for refusal to testify, as required by our case law. Petitioner also contends that the hearing officer failed to conduct adequate inquiry into the allegation of coercion. Supreme Court dismissed the petition. The Appellate Division affirmed (Cortorreal v Annucci, 123 AD3d 1337 [3d Dept 2014]).

We granted petitioner leave to appeal and now reverse.

II.

An inmate at a prison disciplinary hearing retains the constitutional right to procedural due process, "implemented by the prison regulations in this State" (Matter of Laureano v Kuhlmann, 75 NY2d 141, 146 [1990]).  Specifically, an "inmate may call witnesses on his [or her] behalf provided their testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals" (7 NYCRR § 254.5 [a]; see Wolff v McDonnell, 418 US 539, 566 [1974]).  In Matter of Barnes v LeFevre (69 NY2d 649 [1986]), interpreting 7 NYCRR 254.5, we held that when a requested witness refuses to testify and "the record does not reflect any reason for the . . . refusal to testify, or that any inquiry was made of him [or her] as to why he [or she] refused or that the hearing officer communicated with the witness to verify his [or her] refusal to testify, there has been a denial of the inmate's right to call witnesses as provided in the regulations" (Barnes, 69 NY2d at 650).

The parties do not dispute that when a requested inmate witness steadfastly refuses to testify, a "witness refusal form signed by the inmate indicating the reason he would not testify adequately protect[s] petitioner's right" to call witnesses (Matter of Jamison v Fischer, 119 AD3d 1306, 1306 [3d Dept 2014]; see also e.g. Matter of Tulloch v Fischer, 90 AD3d 1370, 1371 [3d Dept 2011]).  Petitioner contends, however, that an inmate who, in refusing to testify, adds no substantive explanation to the

printed "I do not want to be involved" line, but merely repeats
the same idea in different language or writes "I do not wish to
testify," has not given a "reason" for refusal to testify within
the meaning of <u>Barnes</u> and its progeny.[1]  We disagree.

When a requested inmate witness states that he or she
is refusing to testify because he or she does not want to get
involved or does not wish to testify, the inmate is giving a
reason under <u>Barnes</u>.  As this Court emphasized in its decision,
the record in <u>Barnes</u> did not reflect "any reason" for the refusal
(69 NY2d at 650).  We did not suggest that some reasons, and not
others, are adequate.  The fact that an explanation is minimal
does not make it any less of a reason.  When a refusing inmate
witness states that he or she does not wish to testify, that is
providing a reason.  The statement clarifies that the inmate will
not testify because he or she does not wish to, and not because
he or she is under compulsion or threat.  Saying one will not
testify because one does not wish to testify is not a redundancy
or tautology.

Moreover, the subjective response of an inmate, faced
with a request that he or she testify at another inmate's
disciplinary hearing, is likely to be somewhat inchoate.  The
inmate's reason for not wishing to testify may ultimately be
simply the desire to avoid becoming entangled in another

---

[1]    Petitioner does not challenge the refusals of those
inmates who added words to the effect that they had no knowledge
of the incident.

prisoner's affairs.  Forcing an inmate to come up with an explanation that is judged substantial enough would be an unwise exercise.  Rather, a hearing officer's focus should be on whether the manner of refusal signifies coercion.

We hold that, as a general rule, when a requested inmate witness refuses to testify, a simple statement by the inmate on a refusal form that he or she does not want to be involved or does not wish to testify is sufficient to protect the requesting inmate's right to call that witness.[2]

### III.

Petitioner's second argument is based on the hearing officer's response to the allegation by one requested inmate witness of coercion at the time of the first hearing.  Petitioner contends that the hearing officer's inquiry was so inadequate as to violate his right to "call witnesses on his behalf" (7 NYCRR § 254.5 [a]; see Wolff, 418 US at 566).

When a hearing officer in a prison disciplinary hearing is presented with an affidavit in which a refusing inmate witness

---

[2]     We have no occasion in this appeal to consider the different rule applied by the Appellate Division in cases where an inmate agrees to testify and later changes his or her mind (compare Matter of Abdur-Raheem v Prack, 98 AD3d 1152, 1153 [3d Dept 2012], Matter of Hill v Selsky, 19 AD3d 64, 67 [3d Dept 2005], and Matter of Codrington v Mann, 174 AD2d 868, 869 [3d Dept 1991], with Jamison, 119 AD3d at 1306, Tulloch, 90 AD3d at 1371, and Matter of Tafari v Fischer, 78 AD3d 1405, 1406 [3d Dept 2010], lv denied 16 NY3d 704 [2011]).  It is sufficient for us to note that there is no inconsistency between our holding and those cases.

claims that he or she was coerced into refusing to testify at the hearing or in a related proceeding, the hearing officer has an obligation to undertake a meaningful inquiry into the allegation. As respondent concedes, when there is a "claim of coercion, . . . the Hearing Officer ha[s] a duty to inquire further into [the] refusal to testify" (Matter of Delgado v Fischer, 100 AD3d 1171, 1172 [3d Dept 2012]).  Whether such an inquiry will require an in-person or telephone interview of the refusing inmate by the hearing officer or may instead proceed through the intermediary of a suitably briefed correction officer will depend on the circumstances surrounding the allegation.

Here, the hearing officer failed to make a meaningful inquiry, either personally or through a correction officer, into the allegation of coercion by the refusing inmate witness. Notably, the correction officer who had interviewed the refusing inmate witness in December 2012 with regard to whether he would testify at the rehearing was not the officer who had spoken with the inmate in the summer of 2012 with regard to the original hearing.  Moreover, there is no evidence in the record that the interviewing officer was aware, at the time of the December 2012 interview, of the affidavit alleging earlier coercion.  It was brought to the hearing officer's attention only after the correction officer had interviewed the inmate.  The correction officer would have had no reason to investigate the allegation during the interview or elicit the inmate's recollections with

respect to the matter.  In short, the record contains no indication that the hearing officer or anyone testifying before the hearing officer asked the inmate whether his refusal to testify at the rehearing was influenced by a prior threat or intimidation.

In these circumstances, the hearing officer failed to determine, in a meaningful manner, whether the inmate's refusal to testify at the rehearing was because of intimidation at the time of the first hearing.  Respondent notes that the inmate witness who alleged intimidation had been transferred from Sing Sing to a distant correctional facility by the time of the rehearing, making it less likely that any prior threat would influence him.  We cannot accept that a transfer from one DOCCS facility to another would eliminate the taint of any coercion that occurred.  In all, the hearing officer failed to undertake the required meaningful effort to determine whether the failure to testify was the product of coercion.

For these reasons, we conclude that a violation of petitioner's right to call witnesses occurred and the lower courts erred in dismissing his article 78 petition.

IV.

The parties do not contest the remedy upon reversal. Petitioner seeks the remedy of expungement.  For its part, respondent concedes that no fair rehearing is now possible and does not seek remittal for a new hearing in the event of a

reversal.

Accordingly, the order of the Appellate Division should be reversed, without costs, the petition granted, respondent's determination annulled, and respondent directed to expunge all references to the proceeding from petitioner's files.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, without costs, petition granted, respondent's determination annulled and respondent directed to expunge all references to the proceeding from petitioner's files. Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam and Garcia concur.  Judge Stein took no part.

Decided October 25, 2016